# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**GENCOR INDUSTRIES, INC.,**

**Plaintiff,**

-vs-                                                             **Case No.  6:11-cv-1730-Orl-31DAB**

**FORT MYER CONSTRUCTION
CORPORATION,**

**Defendant.**

---

# ORDER

This cause comes before the Court on a motion to dismiss (Doc. 12) filed by Defendant Fort Myer Construction Corp. ("FMCC"); a response (Doc. 20) filed by Plaintiff Gencor Industries, Inc. ("Gencor"); and Defendant's reply (Doc. 25).

## I. Overview

Gencor is a Delaware corporation located in Orlando, Florida, that manufactures "asphalt manufacturing plants" and other equipment used in the road and highway construction industry. FMCC is a Virginia corporation located in Washington, D.C., that operates an asphalt manufacturing plant. As relevant to the instant motion, the parties entered into several contracts from May 2008 through August 2010 under which FMCC agreed to purchase from Gencor an asphalt manufacturing plant and various additional parts related to asphalt production.[1] According

---

[1] For clarity, the Court will refer to the agreement to purchase the asphalt plant hereinafter as the "Plant Contract." Subsequent to that purchase, FMCC entered into other contracts for related parts and equipment. Those subsequent agreements will be referred to hereinafter as the "Parts Contract[s]."

to FMCC, there were "significant problems" with the plant, ultimately resulting in a "catastrophic failure." After experiencing these issues, FMCC failed to meet its remaining obligations to Gencor under the Plant Contract and Parts Contracts.

On October 28, 2011, Gencor filed the instant lawsuit asserting four Counts for breach of contract (Count I), open account (Count II), account stated (Count III), and "action for goods sold and delivered" pursuant to Fla. Stat. § 672.709(1)(a) (Count IV). FMCC now moves to dismiss the Complaint for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), or in the alternative, to transfer venue pursuant to 28 U.S.C. § 1404(a).

**II. Background**

It is undisputed that FMCC is a Virginia corporation, with its principle place of business in Washington, D.C. It does not maintain an office in Florida, does not solicit business in Florida, does not have a registered agent for service of process in Florida, does not own any property in Florida, does not maintain a bank account in Florida, and has never performed any work in Florida. (Doc. 12 at 4).

The relevant relationship between the parties began at an industry trade show in Las Vegas sometime in 2008.[2] After that initial meeting, FMCC entered into negotiations with Gencor for the "provision of an asphalt plant to be delivered and installed on [FMCC] property in the District of Columbia." (Doc. 12 at 4). Negotiations took several weeks, but occurred wholly in Washington,

---

[2] Gencor claims in response that the May 2008 Plant Contract "was not an isolated transaction [because] FMCC did business with Gencor for many years before it entered into the [Plant Contract]." (Doc. 20 at 2). FMCC claims however that these prior transactions were sporadic purchases of parts or other items for asphalt plants, not evidence of anything more than an occasional "vendor-purchaser relationship." (Doc. 25 at 2).

D.C., (Doc. 12 at 5), except that Gencor's president had "some involvement" in the negotiations by phone in his Orlando office. (Doc. 20 at 2). On May 9, 2008, the Plant Contract was "accepted by [FMCC] in the District of Columbia," (Doc. 12 at 5), but "executed" in Orlando. (Doc. 20 at 2).[3] Further, it contains a choice of law clause which states that "this instrument and all questions regarding the performance of the parties hereunder shall be controlled by the laws of the State of Florida," and the payment was to be made "in Orlando." (Doc. 1-2 at 21, ¶ 19).

All the parts and equipment for the Plant Contract were manufactured in Orlando, but were "installed"[4] at FMCC's facility in Washington, D.C. (Doc. 20 at 3). Because of the complex logistical concerns, the parties had several phone conversations from their respective offices regarding the delivery and installation of the plant. (Doc. 20 at 2). Additionally, during the negotiation of the Plant Contract, two FMCC employees traveled to Orlando to attend a "training school" operated by Gencor,[5] and an FMCC officer visited the Orlando office in March 2009 for an "open house." (Doc. 20 at 3; Doc. 25 at 2-3).

After installation of the plant was completed, the parties entered into several other agreements for parts related to the asphalt plant (the Parts Contracts). Each of the Parts Contracts contained a Florida choice of law clause and a provision requiring that payment be made "in

---

[3] The contract states that it is "considered executed in Orange County, Florida." (Doc. 1-2 at 21, ¶ 18).

[4] Who actually "installed" the plant is unclear, however, it does appear that at least three Gencor employees provided assistance during and after installation. (Doc. 20 at 2-3).

[5] Several other FMCC employees have attended this training school since 2002. (Doc. 20 at 3). FMCC contends however, that this training was not directly related to the contracts at issue here.

Orlando." (Doc. 20 at 3). One of these contracts, (the "Ultrafoam Contract")[6] included a forum

selection clause which states that "jurisdiction of any dispute shall be in Orange County, Florida."

(Doc. 21 at 13, ¶ 13). Finally, the invoices provided that the goods were sold "F.O.B. factory or

source." (Doc. 20 at 3).

## III. Standard

### A. Personal Jurisdiction

A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears

the initial burden of alleging in the Complaint sufficient facts to make out a prima facie case of

jurisdiction. *Posner v. Essex Ins. Co., Ltd.,* 178 F.3d 1209, 1214 (11th Cir.1999); *see also Polski*

*Linie Oceaniczne v. Seasafe Transp. A/S*, 795 F.2d 968, 972 (11th Cir.1986) (describing procedure

for plaintiff to establish personal jurisdiction under Florida's long-arm statute). Where a defendant

challenges jurisdiction by submitting affidavits in support of its position, "the burden traditionally

shifts back to the plaintiff to produce evidence supporting jurisdiction." *Meier v. Sun Int'l Hotels,*

*Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002); *Posner*, 178 F.3d at 1214; *see also Polski Linie*

*Oceaniczne*, 795 F.2d at 972. Where the plaintiff s complaint and supporting evidence conflict

with the defendant's affidavits, the court must construe all reasonable inferences in favor of the

plaintiff. *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).

To exercise personal jurisdiction over a defendant, the Court must determine whether the

exercise of jurisdiction is: (1) specific or general; (2) appropriate under the state's long-arm

statute; and (3) comports with the Due Process Clause of the Fourteenth Amendment to the United

---

[6] This is also the contract with the largest single unpaid balance.

States Constitution. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984);

*Stubbs v. Wyndham Nassau Resorts & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir.

2006); *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1166 (11th Cir.

2005); *see also Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 502 (Fla. 1989).

Specific jurisdiction is founded on a defendant's activities in the forum that are related to

or arise out of the cause of action alleged in the complaint. *Stubbs*, 447 F.3d at 1360 n. 3 (citing

*Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1292 (11th Cir. 2000)). If a defendant is

subject to specific jurisdiction on one claim but not another, the Court may, in certain

circumstances, exercise personal jurisdiction over the defendant as to both claims. 4A CHARLES

ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1069.7 (3d ed. Supp.

2009). General jurisdiction arises from the defendant's contacts with the forum that are not directly

related to the cause of action being litigated. *Stubbs*, 447 F.3d at 1360 n. 3 (citing *Meier*, 288 F.3d

at 1269). If the defendant is subject to the general jurisdiction of the court, it must respond in that

court to any claim in the complaint. *Id*.

The exercise of specific jurisdiction comports with due process if the defendant has certain

"minimum contacts" with the forum. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)

(quotation and citation omitted); *see also*, *e.g.*, *Fraser v. Smith*, 594 F.3d 842, 845 (11th Cir.

2010). In assessing these contacts, the Court must determine whether the defendant purposefully

availed itself of the privilege of conducting activities in Florida – or purposefully established

contacts in Florida – and whether there is a sufficient nexus between those contacts and the

litigation. *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267 (11th

Cir. 2010).

The exercise of general jurisdiction is more exacting and will comport with due process only if the defendant's contacts with the forum are "continuous and systematic." *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 414; *Sherritt, Inc.*, 216 F.3d at 1292; *see also Seabra v. Int'l Specialty Imports*, 869 So. 2d 732, 734 (Fla. 4th DCA 2004). In Florida, a defendant's contacts are "continuous and systematic" if the defendant has "engaged in substantial and not isolated activity" within the state. *United Tech. Corp. v. Mazer*, 556 F.3d 1260, 1275 n. 16 (11th Cir. 2009) (citing *Woods v. Nova Cos. Belize Ltd.*, 739 So. 2d 617, 620 (Fla. 4th DCA 1999)).

No exercise of jurisdiction, be it specific or general, may offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co.*, 326 U.S. at 316 (quotation and citation omitted). Accordingly, the Court must determine whether the forum's interest in the dispute and the plaintiff's interest in obtaining relief are outweighed by the burden on the defendant of having to defend itself in a Florida court and the interests of the interstate judicial system. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980); *Licciardello v. Lovelady*, 544 F.3d 1280, 1284 (11th Cir. 2008).

**B. Venue**

Any civil action may be transferred to another district where it might have been brought "for the convenience of the parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). In making this determination, a court should , "the plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996) (citation omitted). Accordingly, the burden is on the movant to establish that its suggested forum is more convenient. *In re Ricoh Corp.*, 870 F.2d 570 (11th Cir. 1989).

-6-

## IV. Discussion

### A. Personal Jurisdiction

The parties agree that the Court lacks general jurisdiction over FMCC,[7] and FMCC concedes that the Florida long arm statute is satisfied. (Doc. 12 at 7). Accordingly, the Court turns to whether the exercise of personal jurisdiction over FMCC comports with the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *See Helicopteros Nacionales de Colombia*, 466 U.S. 408, 413 (1984).[8]

Plaintiff has presented sufficient allegations in the Complaint to make out a prima facie case of personal jurisdiction, which Defendant challenges by submitting the affidavit of Christopher M. Kerns, Vice President of FMCC. *Meier*, 288 F.3d at 1269. In response, Gencor submitted the affidavit of Marc Elliott, President of Gencor–in addition to the documents attached to the Complaint. FMCC attached two more affidavits, one from FMCC plant manager Kevin Koon, and another from Jacob W. Zeiders, Jr., another Vice President of FMCC.

### 1. Minimum Contacts

When analyzing a commercial relationship for minimum contacts, a court must recognize that merely entering into a contract with a citizen of another state, standing alone, does not create

---

[7] Gencor does not argue that FMCC's contacts with Florida are "continuous and systematic." *See Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 414.

[8] Both parties assume that the due process analysis should focus on the entirety of the parties' relationship, beginning with the negotiation of the Plant Contract and including the Parts Contracts. The Court questions whether this is the proper analysis, given that the terms of the Parts Contracts were not entirely consistent, and (according to Gencor) not all related to the Plant Contract. However, because personal jurisdiction is waivable and FMCC directs its arguments to the relationship as a whole, the Court will do the same. *See Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701-03, 102 S.Ct. 2099, 2103-05, 72 L.Ed.2d 492 (1982).

sufficient minimum contacts–neither do the unilateral acts of the forum resident. *Burger King Corp.*, 471 U.S. at 478. A court must instead focus on the substance of the transaction including (1) prior negotiations, (2) contemplated future consequences, (3) the terms of the contract, and (4) the actual course of dealing. *Id*. at 479; *see also Diamond Crystal Brands, Inc.*, 593 F.3d at 1268. Jurisdiction is often found where further contacts or "plus factors" connect the defendant to the jurisdiction. *Diamond Crystal Brands, Inc.*, 593 F.3d at 1268; *see also, e.g.*, *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 931-33 (11th Cir. 2007). These "plus factors" may include, for example,

> a defendant's initiating the contractual relationship, visiting the plaintiff's factory to assess or improve quality, sending materials to the plaintiff for inspection or use in shipping, participating in the manufacturing process, establishing a relationship by placing multiple orders, requiring performance in the forum, negotiating the contract via telefaxes or calls with the plaintiff; the list goes on.

*Diamond Crystal Brands, Inc.*, 593 F.3d at 1268-69 (footnotes omitted). As the Eleventh Circuit noted, these "plus factors are not talismans," but rather, they are intended to indicate that the defendant " 'deliberate[ly] affiliat[ed]' with the forum and thus should reasonably anticipate defending suit there." *Id*. (quoting *Burger King Corp.*, 471 U.S. at 482).

FMCC characterizes its contacts with Florida as that of a mere "passive purchaser." *See Borg-Warner Acceptance Corp. v. Lovett & Tharpe, Inc.*, 786 F.2d 1055, 1063 (11th Cir. 1986) (no jurisdiction where primary contact involved isolated purchase of goods manufactured in the forum under a contract negotiated outside the forum, and where non-resident buyers entered the forum solely to return the purchased goods). It emphasizes that, although there were twenty-three different contracts, all were part of the same transaction – which was negotiated and performed wholly in Washington, D.C.

Despite FMCC's characterization of itself as a "passive purchaser," several factors suggest otherwise; both the terms of the contracts and the contemplated future consequences of the transaction suggest that FMCC should reasonably anticipate defending suit in Florida. *Burger King Corp.*, 471 U.S. at 478. Indeed, every contract included, a Florida choice of law clause, (one had a Florida forum selection clause), a provision that payment be made "in Orlando," and that the products were shipped "F.O.B. factory or source." Although it appears that the prior negotiations occurred primarily outside of Florida, the Plant Contract states that it was "executed" in Florida. Moreover, the value and complexity of the transactions in this case necessitated an ongoing relationship between the parties for training, additional equipment upgrades, and possible future repairs – all of which were future consequences of the Plant Contract that should have been contemplated by FMCC.

Additionally, there are several 'plus factors' that suggest FMCC should reasonably anticipate defending suit in Florida. *Diamond Crystal Brands, Inc.*, 593 F.3d at 1268-69. FMCC initiated the contractual relationship (albeit, outside of Florida); entered into twenty-three different contracts for additional equipment after the installation of the Plant; negotiated the contract, the installation, and logistics –at least in part–via phone with Gencor in Orlando; two FMCC employees visited Gencor's office in Orlando for training on the new asphalt plant, and FMCC's vice president visited Gencor for an "open house."[9]

---

[9] FMCC argues that this visit is irrelevant because it was unrelated to the contracts at issue in this case. Even assuming that the visit was not directly related to the contracts, it is not wholly irrelevant to this case because it bears on the parties relationship and the connection to Florida. The attendance of FMCC's vice president ("Zeiders") at a Gencor "open house" may have arguably been made with the purpose of strengthening the anticipated future relationship between the parties. Indeed, FMCC does not suggest a contrary reason for the visit, only that it was "random or fortuitous" because

Although the factors in *Burger King* combined with the 'plus factors" listed in *Diamond Crystal Brands* are important for the Court to consider, due process is not a mechanical test; rather, a court should use a "highly realistic approach." *Burger King Corp.*, 471 U.S. at 478; *Diamond Crystal Brands, Inc.*, 593 F.3d at 1268-69. With that in mind, this was a large scale commercial transaction that required the transportation and installation of a series of complicated pieces of equipment. FMCC entered into twenty-three separate agreements with Gencor over the course of two years, each of which included terms that should have put it on notice that it might be called to defend suit in Florida. On these facts, the Court concludes that FMCC has sufficient minimum contacts with Florida. It "deliberately affiliated" with Gencor in Florida, and thus should reasonably anticipate defending suit in Florida.

*2. Fair Play and Substantial Justice*

In addition to having minimum contacts with the forum, the exercise of jurisdiction over a non-resident defendant must comport with traditional notions of fair play and substantial justice. *Burger King Corp.*, 471 U.S. at 476. In this analysis, a court looks to " 'the burden on the defendant,' 'the forum State's interest in adjudicating the dispute,' 'the plaintiff's interest in obtaining convenient and effective relief,' 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and the 'shared interest of the several states in furthering fundamental substantive social policies.' " *Id.* at 477 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559 (1980)).

---

Zeiders was in Florida for the 2009 World of Asphalt show and conference. While this may be *another* reason for Zeiders presence in Florida, it does not render his attendance at Gencor's offices "random or fortuitous."

FMCC does not explicitly address this issue in its motion, rather, it argues for a transfer of venue pursuant to 28 U.S.C. § 1404(a). Regardless, the Court finds that no such constitutional unfairness exists if this case were to be litigated in Florida. *Diamond Crystal Brands, Inc.*, 593 F.3d at 1274.

**B. Motion to Transfer Venue**

Whether a transfer is appropriate depends on two inquiries: (1) whether the action might have been brought in the proposed transferee court and (2) whether various factors are satisfied so as to determine that a transfer to a more convenient forum is justified. *First Credit Card Corp. v. Global Electronic Technology, Inc.*, No. 6:08-cv-1974-orl-31GJK, 2009 WL 482242 at *1 (M.D. Fla. Feb. 25, 2009) (citation omitted). In considering whether a transfer is appropriate, courts traditionally consider such factors as (1) the convenience of the parties; (2) convenience of the witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to secure the presence of unwilling witnesses; (5) the cost of obtaining the presence of unwilling witnesses; and (6) the public interest. *Id.* (citations omitted).

FMCC contends that the asphalt plant experienced a "catastrophic failure" which is at the heart of the dispute between the parties. As such, the majority of relevant witnesses and evidence are located in Washington D.C., expert witnesses from both parties would have to visit and inspect the Plant in Washington, D.C., and "it would be abundantly helpful for the judge and jury to visit the asphalt plant to view its operation." (Doc. 12 at 13).

Whether to grant a jury view is a matter within the discretion of the court. *Auto Owners Insurance Co. v. Bass*, 684 F.2d 764, 769 (11th Cir.1982). FMCC does not explain why pictures, diagrams, or descriptions of the equipment would be insufficient, or why an on-site visit would

mitigate any difficulty presented. The claims in this case sound in breach of contract or fraud; not claims that necessitate a jury view.[10] Moreover, although the Plant is in Washington, D.C. and all the relevant equipment was shipped there, it was all manufactured in Orlando. As such, even if a majority of the witnesses are located in Washington, D.C., many are likely to be located in Florida as well.[11]

The only element that counsels in favor of transfer is the expense of sending expert witnesses to view the Plant. Alone however, this is not enough to convince the Court that transfer would do anything other than shift the inconvenience from Defendant to Plaintiff. Defendant has not met its burden; thus, its motion to transfer will be denied. *See Robinson*, 74 F.3d at 260.

Accordingly, it is **ORDERED** that, Defendant's Motion to Dismiss or Transfer Venue (Doc. 12) is **DENIED**. To the extent that Plaintiff moves for a transfer of venue (Doc. 20), that motion is **DENIED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on February 23, 2012.

Copies furnished to:

Counsel of Record
Unrepresented Party

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

---

[10] Given the size and complexity of the products involved here, the Court doubts that an on-site visit–even if feasible–would serve any relevant purpose.

[11] FMCC's argument is based on its anticipated defense and counterclaims. Currently however, the only claims before the Court are premised on FMCC's failure to pay pursuant to its contracts with Gencor. Even assuming that FMCC is correct that its counterclaim will be the dominant issue between the parties, the Court cannot base its ruling on an anticipated counterclaim or defense.